IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **WINNIE STACEY** | § | |
| *Plaintiffs* | § | CASE NO. _____ |
| | § | |
| v. | § | |
| | § | |
| **LANGE MECHANICAL SERVICES, L.P.** | § | **JURY TRIAL DEMANDED** |
| **and JAMIE LANGE,** | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.
### INTRODUCTION

1. This lawsuit arises from Lange Mechanical Services, L.P.'s ("*Lange Mechanical*") willful violations of the Fair Labor Standards Act and failure to pay Winnie Stacey ("*Plaintiff*" or "*Ms. Stacey*") a specific, negotiated hourly wage, and Jamie Lange's ("*Ms. Lange*") violations of the Texas Debt Collection Practices Act and extreme and outrageous conduct that ultimately caused Ms. Stacey to suffer a stroke. Collectively, Lange Mechanical and Ms. Lange are referred to as "Defendants."

2. From the time Ms. Stacey began her employment with Lange Mechanical, Lange Mechanical failed to pay Ms. Stacey the negotiated regular rate of pay that Ms. Stacey substantially relied on to her detriment. Instead, Lange Mechanical unilaterally decided to pay Ms. Stacey an hourly wage of $5.00 less than the hourly wage Lange Mechanical promised to pay Ms. Stacey at the time it induced her to quit her prior job and accept employment with Lange Mechanical.

3. Lange Mechanical also failed to pay Ms. Stacey for hours worked outside of normal working hours, or to include such hours in its overtime calculations.

4. Further, Ms. Lange verbally and in writing disrespected, berated, and belittled Ms. Stacey throughout her employment with Lange Mechanical. Ms. Lange's abuse was so severe that it ultimately caused Ms. Stacey to suffer a stroke.

Page 1

4811-9578-0336v.3

5. In connection with Ms. Lange's verbal and written abuse, Ms. Lange harassed and threatened Ms. Stacey in an attempt to collect $100,000 Ms. Lange loaned to Ms. Stacey.

6. Accordingly, Ms. Stacey brings this action to recover unpaid wages and overtime wages and to recover for intentional infliction of emotional distress, violations of the Texas Debt Collection Practices Act, and under the theory of promissory estoppel.

## II.
## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District and Division.

## III.
## PARTIES

9. Plaintiff is a natural person residing in Harris County, Texas.

10. Defendant Lange Mechanical is a Texas limited partnership organized and existing under the laws of the State of Texas. Lange Mechanical may be served with process through its registered agent Lange Mechanical, Inc. at 933 Wakefield Drive, Houston, Texas 77018.

11. Defendant Ms. Lange is an individual residing at 5805 Logan Ln, Houston, Texas 77007 and may be served with process at her home address or wherever she may be found.

## IV.
## FACTS

A. **BRIEF HISTORY**

12. In 2018, Ms. Lange reached out to Ms. Stacey via Facebook Messenger. Both Ms. Stacey and Ms. Lange were navigating their way through contentious divorces and developed a friendship

predicated on their common circumstances. At the time Ms. Stacey and Ms. Lange met or shortly thereafter, Ms. Lange owned a majority interest in Lange Mechanical.

### B. THE PARTIES EXECUTE A PROMISSORY NOTE

13. In 2019, Ms. Stacey's divorce attorney required the payment of an additional retainer fee for continued representation. Ms. Stacey disclosed to Ms. Lange her inability to pay the retainer fee. Ms. Lange offered to loan Ms. Stacey the money needed to pay the retainer fee.

14. On April 23, 2019, Ms. Stacey and Ms. Lange executed a promissory note whereby Ms. Lange loaned Ms. Stacey $100,000.00 in exchange for 5% interest (the "*Promissory Note*"). Repayment of the loan was expressly contingent upon a settlement or "win" of the Enforcement Judgment issued by the 306th District Court of Galveston County or a separate settlement in Ms. Stacey's divorce case.

15. As of the filing of this Complaint there has not been a settlement or "win" of the Enforcement Judgment or a settlement in Ms. Stacey's divorce case.

### C. MS. LANGE OFFERS MS. STACEY AN EMPLOYMENT POSITION WITH LANGE MECHANICAL

16. In 2020, Ms. Stacey was employed by a car dealership. Ms. Lange, as the owner of Lange Mechanical and knowing Ms. Stacey's eagerness to help others, expressed to Ms. Stacey the need to hire a new employee. Through multiple text messages and verbal conversations, Ms. Lange offered Ms. Stacey an employment position at an agreed hourly pay rate of $23.00 per hour (the "*Employment Offer*"). Ms. Lange specifically laid out the terms of employment in writing:

> *"You're [sic] hours are 8-5*
> *Benefits start after 30 days*
> *Hourly Rate $23.00*
> *Sooooo????"*

17. Ms. Stacey countered the offer and requested $25.00 per hour with an explanation as to why she needed more money. In response, Ms. Lange used the Promissory Note as ammunition to guilt Ms. Stacey into quitting her current job for a pay rate of $23.00 per hour.

18. During Ms. Stacey's final two weeks of employment at the car dealership, Ms. Lange informed Ms. Stacey that Lange Mechanical would become insolvent if she did not cut costs. Specifically, she told Ms. Stacey, via text message:

> "*I can't pay you $23.00 a hour. I don't have it! What do you want to do? What can you do?*"

Naturally eager to help her friend, Ms. Stacey responded:

> "*I told you I want to help YOU! I want to be apart of helping you build..*"

19. Seizing the opportunity, Ms. Lange offered to pay Ms. Stacey $18.00 an hour. Ms. Stacey countered at $20.00 an hour, which Ms. Lange rejected. Risking unemployment if she did not agree to the new terms, Ms. Stacey reluctantly agreed to start her employment position with Lange Mechanical at a reduced pay rate of $18.00 an hour.

    **D.**     **LANGE MECHANICAL FAILED TO PAY MS. STACEY OVERTIME FOR ALL HOURS WORKED OVER FORTY IN A WORKWEEK**

20. Throughout Ms. Stacey's employment, Ms. Lange required Ms. Stacey to complete odd tasks and assignments outside of her normal job duties and/or outside of her normal working hours. These tasks included gardening at Ms. Lange's home and flying to Colorado to assist Ms. Lange at her vacation home. Ms. Lange did not receive any overtime compensation for completing these tasks.

21. Further, Ms. Lange would often text Ms. Stacey outside of working hours and ask work-related questions or require work-related tasks to be completed. Ms. Stacey never received compensation for the time spent responding to these text messages, which frequently involved back and forth conversation that consumed a significant amount of time.

22. Occasionally, Ms. Stacey also worked overtime to complete her normal job duties but was not compensated for those overtime hours.

    **E.**     **MS. LANGE HARASSES AND VERBALLY ABUSES MS. STACEY THROUGHOUT HER EMPLOYMENT WITH LANGE MECHANICAL**

23. Ms. Stacey's experience as an employee of Lange Mechanical was nothing short of a disaster. Time after time, Ms. Lange verbally and through text message berated and belittled Ms. Stacey. Further, Ms. Lange burdened Ms. Stacey with information that could be detrimental to Ms. Stacey's continued employment. Specific examples of Ms. Lange's obscured and abusive behavior include, but are not limited to:

(i) A text message dated August 5, 2020, whereby Ms. Lange berated Ms. Stacey over a package delivered to Lange Mechanical that had been opened by an unknown person. In addition to the irrational reaction, Ms. Lange threatened to and did, in fact, install cameras pointing directly at Ms. Stacey's desk while she was at work. Ms. Lange's extreme outburst against Ms. Stacey and the subsequent installation of cameras watching Ms. Stacey's every-move during working hours caused Ms. Stacey severe emotional distress.

(ii) A text message whereby Ms. Lange states:

> "I told Bruno I want to sell LMS...he's not happy
> I don't want to do this anymore
> I despise it
> and I'm to the point I'd rather sell it and get on with my life"

As an employee of Lange Mechanical, Ms. Lange's extreme dramatization of her management duties caused Ms. Stacey severe emotional distress. Ms. Stacey left a stable job at the beginning of 2020 to work for Lange Mechanical. Ms. Lange's outrageous outbursts caused Ms. Stacey severe distress because her job and sole source of income were at risk. Further, this type of communication subjected Ms. Stacey to more severe emotional distress by forcing her to deal with the fluctuating mental state of her manager and the owner of Lange Mechanical. In the same string of text messages, Ms. Lange also tells Ms. Stacey:

> "He's going to fucking shit when he finds out a wire transfer $160,000 to Myself."

This extreme conduct, both in terms of the action and sharing the information, caused further distress because it is indicative of fraud against Lange Mechanical and not an issue in which Ms. Stacey wanted to be involved.

   (iii) A text message relating to Ms. Stacey picking up coffee for the office prior to arriving at work on a Monday morning. Ms. Stacey informed Ms. Lange that in order to pick up the coffee she would not arrive at her scheduled time, 8:00 AM. Ms. Lange responded that she did not feel comfortable relaying that information to Ms. Stacey's direct supervisor, Lorena, and that Ms. Stacey needed to handle those communications herself. Ms. Stacey responded and asked for Lorena's phone number to which Ms. Lange replied:

> *"I'm on the edge of calling this quits*
> *Because I'm inundated with shit like this nonstop every day and I can't do it. It's not normal. If we have people that are fucking brain dead we have to be led by the nose by a ring and I can't do it. I'm under too much goddamn stress."*

Ms. Lange's extreme outburst, profanity, and insinuation that Ms. Stacey is "brain dead" in response to a simple request caused Ms. Stacey severe emotional distress.

   (iv) In September 2020, Ms. Lange sent Ms. Stacey text messages on a Sunday (outside of Ms. Stacey's working hours) relating to an Amazon delivery. Ms. Stacey responded on the following Monday and reminded Ms. Lange that they had discussed, a week prior, that the package was not delivered. In response, Ms. Lange states:

> *"But my Amazon notice says it was delivered?? Why didn't you tell me it was never delivered?*
> *We discussed this (in writing) too*
> *This is not working out, Winnie.*
> *You are struggling to do simple tasks."*

After again reminding her that they had discussed the non-delivery of the package, Ms. Lange went on a tirade about all the *"simple tasks"* Ms. Stacey is unable to perform. Specifically, an issue with the mail delivery was brought up. It is important to note that during the relevant time period, the

mail delivery was unreliable, at best, due to the COVID-19 pandemic. Nonetheless, Ms. Lange states:

> "The mail has NEVER been a problem.
> You're the same person who can't get paper towels at the grocery store and I can EVERY TIME
> I don't understand it but it's something with YOU
> YOU have issues"

Once again, this extreme outburst and direct attack against Ms. Stacey and her competency caused severe emotional distress.

(v)  In another barrage of degrading text messages, Ms. Lange sent Ms. Stacey 15 unsolicited and unanswered text messages during working hours attacking Ms. Stacey's integrity and mental capacity. Specific examples of the demeaning attacks and conduct within those text messages include the following excerpts:

> "Please Please reread this
> sentence and really reflect on what it means. YOU are THE WORST individual I have ever had to manage in a professional capacity AT THIS and it is exhausting, Winnie."
> "I OWN LMS. NOBODY touches one penny of LMS except me. Bruno and Will have a very clear understanding of this (so does Reggie, Winnie. Did it not cross your mind of this when you were opening the envelopes of CASH that Reggie NEVER OPENED and Bruno NEVER OPENED EITHER…but YOU SURE DID! )
> Why?
> Tell me WHY you did this, Winnie?"
> "Let's go over this again. WHY did you open the envelopes of cash after you were told NOT TO?
> Do you think I am running a Business that is not above board?
> Do you really think I would have YOU or ANYONE carry over $10,000 in stupid, fucking white envelopes through IAH and the Denver Airport???
> FOR WHAT!!????
> What would be so pressing that I NEED $10,000 in CASH to be delivered to me by Winnie Stacey !???"
> "I get it but how else do we tell you your job is to figure it out. How many of us have said: GOOGLE IT?
> What steps have you taken to learn Excel and Word?
> We have discussed this for 6 months…what have you done to get enrolled in an online class???
> DO NOT tell me you are being attacked. You are accountable, Winnie. Don't confuse the two."

Page 7

Finally, Ms. Stacey responds to Ms. Lange's unhinged text messages and attempts to explain herself, to which Ms. Lange responds in a shifting manner:

> "You are valuable to LMS and You are valued at LMS. We want the same thing and that's good enough for me."

### F.   MS. STACEY SUFFERS A STROKE AND MS. LANGE'S ABUSIVE TACTICS ESCALATE

24.   On November 16, 2020, Ms. Lange engaged in another verbally abusive tirade and, using demeaning and belittling language, demanded that Ms. Stacey prepare centerpieces for a luncheon while simultaneously insulting and downgrading Ms. Stacey's status in life:

> *"I went to Arne [sic] yesterday I have all your set up for the holiday luncheon on Thursday. It's all up to you now, I'm done. Waste my time on bullshit like this*
> *I'm saying this to you as my friend so you know where I am where I am. Spending fucking three hours at goddamn Arnies yesterday getting this shit for this goddamn luncheon was not relaxing to me. I am done doing all this*
> *You're going to have to wear as many hats as I do. Collect money and make cornucopias and pull off a beautiful luncheon*
> *I'm serious, Winnie. I've been priming you for this for a year. I've been telling you I need you to be a [sic] strong as I am. Your position requires this. You have to think ahead of me and with me and as fast as I do.*
> *This is a combination of a year of very intense pressure. You didn't have this kind of pressure on you when you were married to Isa. But I've been trying to clean lots for you is that when you were at your real estate company you had a full staff to help you. You also have a full staff at your house. If I had sent you to Arnies it would've taken you eight hours to do what I did in three hours and about 50 texts between the both of us.*
> *I think what I'm trying to say is that I see everyone evolving. Lauren is having a baby her life is moving on. Your boys are growing and doing manly things. I'm running a company now and a contributor in this community. You need to evolve to [sic]. It's time. You're not that stuck woman anymore and you have to push yourself."*

25.   The following morning, Ms. Stacey suffered a stroke. Ms. Stacey was life-flighted to a local hospital for urgent, life-saving care.

26.   While she fought for her life, Ms. Lange sent to Ms. Stacey's daughter, in what appears to be an attempt to make Ms. Stacey feel like she failed at her job and made Ms. Lange's life more difficult, a picture of the completed cornucopias and says:

> "When she wakes up, show her this picture. These are the cornucopias I made last night for our luncheon. She'll be excited to see that I took care of it and she won't worry."

Ms. Stacey nearly lost her life that morning, and Ms. Lange's response was to let Ms. Stacey know that, although it was an inconvenience, she completed Ms. Stacey's work task.

27.     Ms. Lange continued to inflict severe emotional distress upon Ms. Stacey by persistently sending extreme and outrageous text messages while Ms. Stacey lay in a bed in the hospital's intensive care unit. For example, Ms. Lange sent text messages stating:

> *"You are in a catastrophic situation financially because of your stroke and disability will only pay 60% of you salary. You still have to pay the premium for the policy and you will go on Cobra and have to pay for your Major Medical.*
> *You won't be an employee of LMS anymore once your disability claim goes in and you are responsible for paying your taxes etc.*
> *On a personal level…I was not your Bank. I was your friend. You destroyed that…like you did with Karen. Your holyer [sic] than thou preaching doesn't sink with your actions. You are a walking contradiction and it became difficult to comprehend.*
> *Winnie, I am who I am and I will fight you to my death in every Court I have to just like I have and am with Piske …if you want that I will not walk away fromover [sic] $100k YOU OWE ME. You are responsible for your actions and the consequences of your actions. You aren't exempt before I have not been exempt. You are no different than Isa or Bill. Use people for money, use people for what you can GET then move on and bitch about how wronged YOU ARE."*

28.     Then, on November 21, 2020, Ms. Lange sent a text message to Ms. Stacey's daughter, Lauren, stating:

> *"I'm filing a lien on your mothers land for my hundred thousand dollars."*

29.     Despite knowing that the $100,000 is not secured by any property, including Ms. Stacey's land, Ms. Lange threatened to take legal action towards seizing her property for repayment of a debt that was not and is not yet due. Even more egregious, Ms. Lange continued to harass Ms. Stacey and demand repayment of the Promissory Note, all while knowing that Ms. Stacey was still in the hospital.

## V.
## CAUSES OF ACTION

### COUNT ONE: FAIR LABOR STANDARDS ACT

30.     Lange Mechanical is subject to the overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (the "*FLSA*").

31. At all relevant times, Lange Mechanical was an "employer" within the meaning of 29 U.S.C. § 203(d), "enterprise" within the meaning of 29 U.S.C. § 203(r), and "engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1).

32. At all relevant times, Lange Mechanical's workers, including Ms. Stacey, were engaged in the production of goods for commerce because, during the course and scope of employment with Lange Mechanical, Ms. Stacey handled and worked with goods moving in interstate commerce, including office materials, supplies, mail, and other related materials.

33. Lange Mechanical employed Ms. Stacey as an hourly worker.

34. Ms. Stacey is not exempt from the FLSA because she was paid on an hourly basis and is entitled to overtime pay for all hours worked over forty hours in a given workweek.

35. During her employment with Lange Mechanical, Ms. Stacey was not paid her regular rate of pay for all hours worked and she was not paid one and one-half times her regular rate of pay for hours worked in excess of forty hours in a workweek.

36. Lange Mechanical's violation of the FLSA was willful because Lange Mechanical knowingly failed to properly compensate Ms. Stacey for all hours worked.

37. Lange Mechanical's violation of the FLSA caused Ms. Stacey to suffer a loss of wages.

38. Due to Lange Mechanical's FLSA violations, Ms. Stacey is entitled to recover from Lange Mechanical her unpaid wages and overtime compensation, liquidated damages, reasonable attorneys' fees, costs, and expenses in this action.

**COUNT TWO: TEXAS DEBT COLLECTION PRACTICES ACT**

39. All of the foregoing paragraphs are incorporated as if fully stated herein.

40. Ms. Stacey is a consumer who undertook a consumer debt by executing the Promissory Note.

41. Ms. Lange is a creditor and debt collector.

42. Through her communications and demands, Ms. Lange engaged in threats and coercion in an attempt to collect a debt. Despite the fact that repayment of the Promissory Note was not due yet, Ms. Lange threatened to file an illegal and fraudulent lien against Ms. Stacey's property. Further, in an attempt to collect the debt, Ms. Lange harassed and abused Ms. Stacey through the use of hateful and demeaning text messages. Ms. Lange also misrepresented the character, extent, or amount of the debt by attempting to collect the debt that was not yet due.

43. Ms. Lange's threats, coercion, harassment, and abuse against Ms. Stacey in an attempt to collect a debt caused Ms. Stacey to suffer actual damages within the jurisdictional limits of this court. Ms. Stacey is further entitled to attorneys' fees pursuant to Section 392.4033(b) of the Texas Finance Code.

**COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

44. All of the foregoing paragraphs are incorporated as if fully stated herein.

45. Ms. Lange's intentional verbal abuse towards Ms. Stacey was beyond all possible bounds of decency. Throughout Ms. Stacey's employment with Lange Mechanical, Ms. Lange intentionally and continuously belittled, berated, and insulted Ms. Stacey.

46. Ms. Lange's extreme and outrageous conduct caused Ms. Stacey emotional distress so severe that she suffered a life altering stroke.

47. Due to Ms. Lange's extreme and outrageous conduct, Ms. Stacey must attend weekly doctor and therapy appointments in an effort to cope with and attempt to reverse the damage caused by the stroke.

48. Ms. Lange's extreme and outrageous conduct caused Ms. Stacey to suffer mental-anguish and actual damages within the jurisdictional limits of this court.

**COUNT FOUR: PROMISSORY ESTOPPEL**

49. All of the foregoing paragraphs are incorporated as if fully stated herein.

50. Ms. Stacey seeks to recover damages under a promissory estoppel theory.

51. Lange Mechanical promised to pay Ms. Stacey $23.00 per hour to quit her current job and accept an employment position with Lange Mechanical.

52. Ms. Lange knew that Ms. Stacey was currently employed and would quit her job prior to beginning her full-time employment with Lange Mechanical.

53. As evidenced by submitting her two weeks' notice to quit her job, Ms. Stacey substantially relied on Lange Mechanical's promise to pay an hourly wage of $23.00 to her detriment.

54. Lange Mechanical's promise and retraction thereof following Ms. Stacey's detrimental reliance caused Ms. Stacey to suffer actual damages within the jurisdictional limits of this court.

## VI.
## JURY DEMAND

55. Ms. Stacey demands a trial by jury.

## VII.
## CONDITIONS PRECEDENT

56. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## VIII.
## PRAYER

57. WHEREFORE, Ms. Stacey prays for:

   (a) A judgment against Lange Mechanical awarding Ms. Stacey her unpaid wages and overtime compensation and an additional, equal amount, as liquidated damages;

   (b) A judgment against Ms. Lange awarding Ms. Stacey actual damages incurred as a result of Ms. Lange's violations of the Texas Debt Collection Practices Act;

   (c) A judgment against Ms. Lange awarding Ms. Stacey actual and mental anguish damages incurred as a result of Ms. Lange's intentional infliction of emotional distress;

   (d) A judgment against Lange Mechanical awarding Ms. Stacey actual damages incurred as a result of promissory estoppel;

(e) An order awarding attorneys' fees, costs, and expenses for violation of the FLSA, the Texas Debt Collection Practices Act, and promissory estoppel;

(f) Pre- and post-judgment interest at the highest applicable rates; and

(g) Such other and further relief which may be necessary and appropriate.

July 19, 2021                                       Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Brenna R. Lermon*
    Brenna R. Lermon
    State Bar No. 24092514
    700 Milam Street, Suite 2700
    Houston, Texas 77002-2806
    Telephone: (713) 222-4015
    Email: blermon@munsch.com
**ATTORNEY FOR PLAINTIFF**